JAMES J. BIERBOWER ET AL., APPELLANTS, V. MAYLON HANSON ET AL., APPELLEES.

424 N.W.2d 132

Filed June 3, 1988.   No. 86-610.

Gary F. Wence of McGrath, North, O'Malley & Kratz, P.C., for appellants.

Larry G. Carstenson of Adams, Carstenson, Owens & Jones, for appellees.

Boslaugh, White, Caporale, and Grant, JJ., and Norton, D.J.

Boslaugh, J.

The plaintiffs, James J. and Ellen B. Bierbower, commenced this action to compel the defendants Maylon and Kathryne Elizabeth Hanson to restore the land owned by Maylon Hanson Farms, Ltd., partnership to its natural condition, and to recover damages. The action was dismissed as to Mrs. Hanson in this court, and she is no longer a party.

The plaintiffs own the northeast quarter of Section 28, Township 11 North, Range 6 West of the 6th P.M., in Hamilton County, Nebraska. The Hanson land lies immediately north of the plaintiffs' property and is legally described as the southeast quarter of Section 21, Township 11 North, Range 6 West of the 6th P.M., Hamilton County, Nebraska.

It is undisputed that a natural watercourse enters the Hanson land on its western edge, approximately halfway between the north and south boundaries of the land. Approximately 1,500 acres of farmland drain into this watercourse. Water which enters the watercourse flows generally in a south to southeasterly direction through the Hanson property, then through the plaintiffs' property, and ultimately into Lincoln Creek, a tributary of the Blue River.

There is a natural ridge running from the north to the south and southeast on the Hanson property which generally follows an irrigation lateral depicted in aerial photographs. This ridge

divides the natural drainage on the Hanson property so that surface and irrigation water on the west side of the ridge flows to the west, and water on the east side of the ridge flows to the east. Prior to 1983, water on the east side of the ridge flowed into a road ditch and borrow pit along the east side of the Hanson property, and just west of Highway 14, where it remained until it evaporated, percolated, or was pumped out.

In 1983, Hanson constructed a shallow drainage ditch running west from the road ditch to the watercourse. The purpose of the drainage ditch was to drain overflow water from the roadside ditch into the watercourse and then, by use of a 12-inch culvert, allow water from the watercourse to run east into a reuse pit located near the south line of the Hanson property. Exhibit 20, an engineering drawing, shows the reuse pit is situated along the eastern side of the watercourse and south of the drainage ditch. Kevin Lynn Prior, a consulting engineer, testified that a 12-inch culvert used as an inlet pipe to the reuse pit is "approximately 18-hundredths lower than a flow line of the channel itself." He further testified that water will flow into the reuse pit if it is empty, but a part of the water will continue to flow downstream, through the Bierbower property, and that the 12-inch culvert probably would not be fully effective in carrying off the increased flow from the drainage ditch. The purpose of diverting water into the reuse pit was to allow the defendant to repump the water into other areas of the farm, thus making it more efficient to irrigate.

According to Louis E. Roberts, Jr., a dirt contractor hired by Hanson, directing water into the reuse pit would allow Hanson to use only two pumps on his farm instead of three for irrigation purposes.

The plaintiffs alleged that the ditch reversed the natural drainage course of surface waters on the eastern side of the Hanson property, which caused an increase in the amount of water flowing through the natural watercourse on the plaintiffs' land.

At the close of the plaintiffs' evidence, the trial court dismissed the claim for damages. At the close of all of the evidence, the trial court found that the plaintiffs had failed to prove that the partnership had violated Neb. Rev. Stat. § 31-201 (Reissue 1984) in any way, and dismissed the petition.

The plaintiffs have appealed and contend that the trial court erred in finding that "the construction, operation and maintenance of Defendants' drainage ditch did not violate or exceed Neb. Rev. Stat. §31-201 (1943)."

Section 31-201 provides:

> Owners of land may drain the same in the general course of natural drainage by constructing an open ditch or tile drain, discharging the water therefrom into any natural watercourse or into any natural depression or draw, whereby such water may be carried into some natural watercourse; and when such drain or ditch is wholly on the owner's land, he shall not be liable in damages therefor to any person or corporation.

In *Jameson v. Nelson*, 211 Neb. 259, 263-64, 318 N.W.2d 259, 262-63 (1982), we stated:

> The owner of land is the owner of surface waters which fall, arise, or flow upon it, and he may retain them for his own use without liability. He may also change their course on his own land by ditch or embankment, but he may not divert them upon the lands of others except in depressions, draws, swales, or other drainways through which such waters were wont to flow in a state of nature. *Nichol v. Yocum*, 173 Neb. 298, 113 N.W.2d 195 (1962). An owner of land has the right in the interest of good husbandry to drain ponds or basins thereon of a temporary character, and *which have no natural outlet or course of flow, by discharging the waters thereof by means of an artificial channel into a natural surface-water drain on his own property, and through such drain over the land of another proprietor in the general course of drainage in that locality, even though the flow in such natural drain is thereby increased over the lower estate, and provided that this is done in a reasonable and careful manner and without negligence. Pospisil v. Jessen*, 153 Neb. 346, 44 N.W.2d 600 (1950). While the flow of surface waters in a natural depression, draw, swale, or other natural drainway may be temporary and occasional, the course which they uniformly take is the controlling factor. *Nichol v. Yocum, supra.*

(Emphasis supplied.)

The plaintiffs' contention in this case is that Hanson had no right, under § 31-201, to construct the shallow drainage ditch across and through the ridge on Hanson's land, because that allowed water to enter the natural watercourse which runs through the land of the plaintiffs and Hanson which otherwise would never have reached that watercourse. A similar contention was considered and discussed in *Nickman v. Kirschner*, 202 Neb. 78, 273 N.W.2d 675 (1979).

In the *Nickman* case, the defendants had constructed a ditch to drain a lagoon on their property into a natural watercourse on their property. With respect to the plaintiffs' contention that the ditch must itself follow the natural course of drainage, we said at 83, 273 N.W.2d at 679:

> Plaintiffs argue that an artificial channel into which surface waters are drained must itself follow the natural course of drainage, and cannot vary therefrom. Plaintiffs assert this is what defendants have done.
>
> This is not a correct assessment of the law. The same argument was made in Bures v. Stephens, 122 Neb. 751, 241 N.W. 542, in which the court said: "The appellant contends that the ditch does not follow the general course of drainage; that without the ditch the water would never run there. That is undoubtedly true, for without it the basin would not drain. We are of the opinion that the ditch carries the water in the general course of drainage." The trial court in the instant case found the ditch upon defendants' land was consistent with the general course of drainage of the area involved. This is a sufficient compliance with the rule. It is also clear that the natural watercourse into which the ditch drains is the only one reasonably accessible to defendants.

The essential requirements of § 31-201 are that the ditch be located wholly on the owner's land and the water be discharged into *any* natural watercourse or natural depression or draw which also is located on the owner's land. The ditch constructed by Hanson in this case satisfies those requirements.

The judgment of the district court is affirmed.

AFFIRMED.